**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GARY T. RAMADEI, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:21-CV-01435 (JCH) |
| v. | : | |
| | : | |
| RADIALL USA, INC. | : | |
| Defendant. | : | SEPTEMBER 8, 2023 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27)**

I.      **INTRODUCTION**

Gary Ramadei ("Ramadei") brings this action against his former employer, Radiall USA, Inc. ("Radiall"), alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a–60(b)(1), as well as retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615.

Before the court is Radiall's Motion for Summary Judgment, see Defendant's Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 27), which Ramadei opposes, see Plaintiff's Corrected Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 37).  For the reasons discussed below, the Motion is granted in part and denied in part.

II.     **BACKGROUND**

A.      Factual Background[1]

Radiall is a private corporation that designs and manufactures interconnect devices and transceivers.  Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pl.'s LR 56(a)2 Stmt.") ¶ 1 (Doc. No. 34-18)[2]; Defendant's Local Rule 56(a)1 Statement of Facts ("Def.'s LR 56(a)1 Stmt.") ¶ 1 (Doc. No. 27-2).  Radiall has offices and manufacturing plants throughout the United States and overseas, including in France, Mexico, and Connecticut.  Pl.'s LR 56(a)2 Stmt. ¶¶ 5-7; Def.'s LR 56(a)1 Stmt. ¶¶ 5-7.

In 2005, Radiall purchased Applied Engineering Products, where Ramadei was employed; Ramadei continued working for Radiall as a Facilities Manager from 2005 until his termination in 2020.  Pl.'s LR 56(a)2 Stmt. ¶ 2; Def.'s LR 56(a)1 Stmt. ¶ 2; Plaintiff's Statement of Additional Material Facts ("Pl.'s AMF") ¶ 2 (Doc. No. 34-1).  Over the course of his time at Radiall, Ramadei's job responsibilities as Facilities Manager evolved.  From 2005 to December 2019, Ramadei worked in Radiall's New Haven facility, an approximately 65,000-square foot manufacturing plant.  Pl.'s LR 56(a)2 Stmt.

---

[1] The court draws primarily from the parties' Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to Ramadei, the nonmoving party.  Unless otherwise noted, the facts are undisputed.

[2] Under Local Rule 56(a)2, "[a] party opposing a motion for summary judgment shall file . . . a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56 (a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact . . . ."  D. Conn. L. Civ. R. 56(a)2(i).  The plaintiff has provided this document (Doc. No. 34-18) under the title "Plaintiff's Response to Defendant's Local Rule 56(a)1 Statement".  The court construes this document to be Plaintiff's Rule 56(a)2 Statement and will cite it accordingly.

Local Rule 56(a)2 further provides that a party may also include, in the Local Rule 56(a)2 Statement, "a separate section entitled 'Additional Material Facts' setting forth in separately numbered paragraphs . . . any additional facts . . . ."  Id. at 56(a)2(i).  Plaintiff has submitted this document (Doc. No. 34-1) under the title "Plaintiff's Local Rule 56(a)2 Statement".  The court construes this document to be part of plaintiff's Local Rule 56(a)2 Statement and will cite to it as plaintiff's "Additional Material Facts".

¶ 3; Def.'s LR 56(a)1 Stmt. ¶ 3.  In 2007, when the New Haven facility was at its peak,

Ramadei was responsible for managing a team of five maintenance employees.  Pl.'s

LR 56(a)2 Stmt. ¶ 12; Def.'s LR 56(a)1 Stmt. ¶ 12.  Over the next decade, however,

Radiall began to shift its business structure, "moving away from manual

electrical/mechanical manufacturing and toward more high-tech digital type production."

Pl.'s LR 56(a)2 Stmt. ¶ 6; Def.'s LR 56(a)1 Stmt. ¶ 6.  In addition, around 2017-2018,

Radiall "relocated its antenna chamber to France and eliminated its New Haven

machine shop."  Pl.'s LR 56(a)2 Stmt. ¶ 7; Def.'s LR 56(a)1 Stmt. ¶ 7.  As a result, the

number of employees on Ramadei's maintenance team dwindled.  Pl.'s LR 56(a)2 Stmt.

¶¶ 5-7, 12-13, 15; Def.'s LR 56(a)1 Stmt. ¶¶ 5-7, 12-13, 15.  According to Ramadei,

during this period, one of the mechanics on his team—William Moleski ("Moleski"), who

was approximately 63 years old—lost his job after taking medical leave.  See Plaintiff's

Transcript of the Deposition of Gary Ramadei ("Pl.'s Ramadei Dep. Tr."), at 36:12-36:21

(Doc. No. 34-5).[3]  Ramadei alleges that, when he advocated for Moleski's return, his

then-supervisor, William Neale ("Neale"), responded that "Moleski was old enough to

retire and he should."  Id. at 37:5-37:13; Pl.'s AMF ¶ 9.  Neale denies ever making this

statement.  See Affidavit of William Neale ("Neale Aff.") ¶ 9, Def.'s Ex. F (Doc. No. 27-

4).  Ramadei also alleges that, around the same time, two other Radiall employees—

Joanna Petrowski, who was over 60 years old, and Dominick Naclerio, who had multiple

---

[3] In its Opposition materials, plaintiff's counsel attaches portions of deposition transcripts as "unnumbered . . . exhibits".  Declaration of Amanda M. DeMatteis, at 1 (Doc. No. 34-2).

The court also notes that plaintiff and defendant cite to different portions of the same depositions; in turn, the court will specify, in each citation, whether it is citing to a deposition transcript proffered by the plaintiff or the defendant.

sclerosis and was one year from retirement—were terminated by Radiall after taking medical leave.  See Pl.'s Ramadei Dep. Tr. at 136:15-137:17.

By October 2018, Ramadei was the only employee left on the maintenance team. Pl.'s LR 56(a)2 Stmt. ¶ 15; Def.'s LR 56(a)1 Stmt. ¶ 15.  Both parties agree that, after 2018, there was "less work that was required of the facility management team."  See Pl.'s LR 56(a)2 Stmt. ¶ 16; Def.'s LR 56(a)1 Stmt. ¶ 16; Defendant's Transcript of the Deposition of Gary Ramadei ("Def.'s Ramadei Dep. Tr."), Def.'s Ex. E, at 47:9-47:12 (Doc. No. 27-4).  However, Ramadei maintains that, as the sole remaining facilities employee, he was responsible for a wide range of duties—some of a more complex, skill-based nature, and others of a more menial nature.  See Pl.'s Ramadei Dep. Tr. at 51:2-51:24.  Because of its shift in business, Radiall no longer needed a facility as large as the New Haven facility.  Pl.'s LR 56(a)2 Stmt. ¶ 17; Def.'s LR 56(a)1 Stmt. ¶ 17.  In December 2019, Radiall moved from the New Haven facility to a much smaller, 30,000-square foot facility in Wallingford, Connecticut.  Pl.'s LR 56(a)2 Stmt. ¶ 17; Def.'s LR 56(a)1 Stmt. ¶ 17.  The parties dispute whether Ramadei's duties changed after the shift to Wallingford—Radiall claims that they "diminished even further . . . due to the reduced space", see Def.'s LR 56(a)1 Stmt. ¶ 19, which Ramadei denies, see Pl.'s LR 56(a)2 Stmt. ¶ 19.[4]

---

[4] In support, Ramadei offers two pieces of evidence: (1) a list of the maintenance team's responsibilities, put together by Neale, as of November 2018, see Maintenance Team Responsibilities List, Pl.'s Ex. 3 (Doc. No. 34-10); and (2) testimony from Richard Broga—who was Ramadei's second supervisor from May 2020 until his termination—stating that Ramadei continued to be responsible for virtually all the duties in the 2018 list up until his termination, see Plaintiff's Transcript of the Deposition of Richard Broga ("Pl.'s Broga Dep. Tr."), at 35:8-36:14 (Doc. No. 34-3).

According to testimony from Maite Tristan Magarino ("Tristan")—the President of Radiall—the COVID-19 pandemic had a significant impact on Radiall's finances, causing a "negative growth of 34.8 percent" in 2020 as compared with 2019, and an additional projected loss of "almost 11 percent" for 2021.  Defendant's Transcript of the Deposition of Maite Tristan Magarino, Def.'s Ex. A, at 25:20-25:23 (Doc. No. 27-4).  The parties disagree, in part, as to what then transpired over the course of 2020.  Radiall asserts that, as the pandemic unfolded in the spring and summer of 2020, Radiall officials—including Tristan; Patrice Rigoland ("Rigoland"), the General Manager; and Lori Musante ("Musante"), the then-Director of Human Resources—began to form "more definitive" plans to "reduc[e] staffing costs", which included "the elimination of the Facilities Manager position."  Def.'s LR 56(a)1 Stmt. ¶¶ 21-22.  Radiall has offered four Exhibits, each of them charts, purporting to show its internal plans to cut costs, in part, by eliminating Ramadei's Facilities Manager position during either Quarter 2 or Quarter 3 of 2020.  See First Defensive Plan, Def.'s Ex. G (Doc. No. 26-1); Staff Assessment, Def.'s Ex. H (Doc. No. 26-1); June 22 Salary Cuts, Def.'s Ex. I (Doc. No. 26-1); Second Defensive Plan, Def.'s Ex. J (Doc. No. 26-1).[5]  Ramadei does not appear to contest the authenticity of the documents, but he disputes Radiall's assertion that the documents show that Radiall intended to eliminate his position prior to October 2020.  See Pl.'s LR 56(a)2 Stmt. ¶¶ 22-25.

---

[5] Of the four documents, only one—Exhibit I—contains a visible date.  Otherwise, it appears that the purported dates of each document are provided by Radiall through its Rule 56(a)1 Statement.  See Def.'s LR 56(a)1 Stmt. ¶¶ 22-25.  Radiall has not provided any internal emails or other communications regarding the termination of Ramadei's position.

On September 8, 2020, Ramadei felt ill and left work early.  Pl.'s LR 56(a)2 Stmt.
¶ 27; Def.'s LR 56(a)1 Stmt. ¶ 27.  Later that day, Ramadei notified Human Resources
that he was feeling unwell and, consequently, he would not be coming into work the
following day.  Pl.'s LR 56(a)2 Stmt. ¶ 28; Def.'s LR 56(a)1 Stmt. ¶ 28.  Unfortunately,
Ramadei's symptoms worsened, and he was admitted to the hospital for pulmonary
embolisms.  Pl.'s LR 56(a)2 Stmt. ¶ 30; Def.'s LR 56(a)1 Stmt. ¶ 30; Pl.'s AMF ¶ 52.  On
September 15, Ramadei was released from the hospital with a note from his physician
stating that he could return to work on September 21.  Pl.'s LR 56(a)2 Stmt. ¶ 31; Def.'s
LR 56(a)1 Stmt. ¶ 31.  The following day, Ramadei notified Richard Broga—his then-
supervisor—Rigoland, and Musante that he would be taking time off from work for the
remainder of the week and the following week to recuperate from his health condition.
Pl.'s LR 56(a)2 Stmt. ¶ 32; Def.'s LR 56(a)1 Stmt. ¶ 32; Sept. 16, 2020 Email from Gary
Ramadei to Lori Musante, Richard Broga, Patrice Rigoland, and Victoria Jenks
("Ramadei Email"), Pl.'s Ex. 6 (Doc. No. 34-13).  At the time, Ramadei was scheduled
for paid time off the week of September 21, and he used that leave to recuperate.  Pl.'s
LR 56(a)2 Stmt. ¶ 32; Def.'s LR 56(a)1 Stmt. ¶ 32.  Although Ramadei was never
placed on FMLA leave, Musante has since acknowledged that Ramadei's request for
leave likely qualified for FMLA protection. Defendant's Transcript of the Deposition of
Lori Musante ("Def.'s Musante Dep. Tr."), Def.'s Ex. D, at 114:2-117:8.  Ramadei
returned to work on September 28.  Pl.'s LR 56(a)2 Stmt. ¶ 35; Def.'s LR 56(a)1 Stmt.
¶ 35.

On October 16, 2020, Ramadei was notified by Broga that his position had been
eliminated and he was losing his job.  Pl.'s Ramadei Dep. Tr. at 133:23-134:13; Pl.'s LR

56(a)2 Stmt. ¶ 41; Def.'s LR 56(a)1 Stmt. ¶ 41.  The decision to terminate Ramadei was made by Musante, Rigoland, and, at a "high level", Tristan.  See Pl.'s LR 56(a)2 Stmt. ¶ 22; Def.'s LR 56(a)1 Stmt. ¶ 22; Plaintiff's Transcript of the Deposition of Maite Tristan Magarino, at 6:17-6:20 (Doc. No. 34-7).  Around the same time, Radiall hired Jason Munson ("Munson")—a man in his 30s—as a "maintenance associate".  Def.'s LR 56(a)1 Stmt. ¶ 41a; Pl.'s LR 56(a)2 Stmt. ¶ 41a; Pl.'s AMF ¶ 64; Defendant's Responses to Plaintiff's Statement of Additional Material Facts ¶ 64 (Doc. No. 41); Offer Letter, Def.'s Ex. S, at 1 (Doc. No. 27-4).  Upon his termination, Ramadei received a letter from Rigoland memorializing his termination and asking him to remain at Radiall for a few more weeks so that he could "transfer . . . the important knowledge [he] gained over the years" to Munson, as well as Broga.  Termination Letter, Pl.'s Ex. 1 (Doc. No. 34-8); see also Plaintiff's Transcript of the Deposition of Richard Broga ("Pl.'s Broga Dep. Tr."), at 51:15-51:17 (Doc. No. 34-3).  Ramadei spent the remaining four weeks of his tenure at Radiall working with Munson and Broga, see Pl.'s Ramadei Dep. Tr. at 156:2-157:18, and once Ramadei left, most of his responsibilities were assumed by Munson and Broga, see Pl.'s Broga Dep. Tr. at 43:12-49:24.

Ramadei was 61 years old at the time of his termination from Radiall.  Pl.'s LR 56(a)2 Stmt. ¶ 2; Def.'s LR 56(a)1 Stmt. ¶ 2.

B.    Procedural Background

On October 29, 2021, Ramadei filed his initial Complaint in this action, see Complaint (Doc. No. 1), in which he brings five Counts against Radiall.  Id.  Counts One and Two allege age discrimination in violation of the ADEA,[6] see id. at ¶¶ 31-37, while

_____

[6] Count Two also seeks liquidated damages under the ADEA.  See Compl. at ¶ 37.

Counts Three and Four allege age discrimination in violation of the CFEPA,[7] see id. at ¶¶ 38-44.  Count Five alleges retaliation in violation of the FMLA.  Id. at ¶¶ 45-48. Radiall filed its Answer to plaintiff's Complaint on January 7, 2022.  See Answer (Doc. No. 12).

On January 17, 2023, Radiall moved for summary judgment on all five Counts. See Def.'s Mot.  Ramadei opposes the Motion.  See Pl.'s Mem.

### III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary

---

[7] Count Four also seeks punitive damages under the CFEPA.  See id. at ¶ 44.

judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

### A.    Age Discrimination Claims

In support of its Motion for Summary Judgment, Radiall argues that all four of Ramadei's age discrimination claims under the ADEA and CFEPA[8] fail because he has not established a prima facie case. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), at 9 (Doc. No. 27-1). Radiall further argues that, even assuming Ramadei has established a prima facie case, his discrimination claims still fail because Radiall had legitimate, nondiscriminatory reasons for terminating his employment. Id. at 12. In response, Ramadei counters that (1) he has indeed established a prima facie case of age discrimination, see Pl.'s Mem. at 11-12, and (2) Radiall's proffered explanations for his termination are pretextual, see id. at 12-13.

Courts in the Second Circuit analyze both ADEA and CFEPA claims under the same burden-shifting evidentiary framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Weichman v. Chubb & Son, 552 F. Supp. 2d 271, 282 (D. Conn. 2008). Under the McDonnell-Douglas framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). If the plaintiff meets this burden, the defendant must articulate a legitimate,

---

[8] In its Memorandum, Radiall analyzes all four age discrimination claims together. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), at 8 (Doc. No. 27-1).

nondiscriminatory reason for its action.  Id.  Once such a reason is given, "the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination."  Id.

However, at this final step, the two statutes diverge.  Under the ADEA, the plaintiff must show that age was the "but-for" cause of the adverse employment action.  See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009).  But-for causation is "established whenever a particular outcome would not have happened 'but for' the purported cause."  Bostock v. Clayton County, 140 S. Ct. 1731, 1739 (2022).  The CFEPA, on the other hand, only requires the plaintiff to prove that age discrimination was a motivating factor behind the adverse action, not that the adverse action could not have occurred without it.[9]  See Wallace v. Caring Sols., LLC, 213 Conn. App. 605, 611-12 (2022).  Because the plaintiff bears a lower burden of proof under the CFEPA, the court will begin by analyzing Ramadei's CFEPA claims.

### 1.    CFEPA Claims (Counts Three and Four)

#### a)    Prima Facie Case

To establish a prima facie case of age discrimination under the CFEPA, a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced an adverse employment action, and (4) that this adverse action occurred under circumstances giving rise to an inference of discrimination.  See Mendillo v. Prudential Ins. Co. of Am., 156 F. Supp. 3d 317, 338, 344-45 (D. Conn. 2016); Steinmetz v. W. Conn. Home Care, No. 3:19-CV-1819, 2022

---

[9] Radiall incorrectly asserts that the standard is the same under the ADEA and CFEPA.  See Def.'s Mem. at 1.

WL 4367595, at *5 (D. Conn. Sept. 21, 2022).  While Radiall does not contest that Ramadei has met the first three elements, it argues that Ramadei has "fail[ed] to present sufficient evidence to establish" an inference of discrimination.  Def.'s Mem. at 9.  Ramadei contends that such an inference is "supplied by the substantial age disparity" between Ramadei, 61-years-old at the time of his termination, and Munson, the "30-something year old man whom Defendant selected in his stead."  Pl.'s Mem. at 12.

Generally, a plaintiff's replacement by a significantly younger person is sufficient, by itself, to establish an inference of age discrimination.  See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000).  In assessing whether a plaintiff was "replaced", courts "focus on the transfer of the plaintiff's job responsibilities, not assumption of his or her title."  Fontecchio v. ABC Corp., No. 12-CV-6998, 2015 WL 327838, at *7 (S.D.N.Y. Jan. 23, 2015).  Moreover, courts in this Circuit have held that, where there is evidence that a majority of a plaintiff's job responsibilities were transferred to a younger employee, such evidence is sufficient to support an inference of age discrimination. See id. at *7; see also Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 105 (2d Cir. 1989) (finding an inference of age discrimination where "the majority of [a plaintiff's] responsibilities . . . were transferred to a twenty-six year old [younger] coworker").

Here, Ramadei has produced evidence that, following his departure, Munson assumed responsibility over many—if not most—of his former duties, albeit at a substantially lower salary.  See Pl.'s Broga Dep. Tr. at 43:12-49:24; Offer Letter at 1. Thus, although Radiall correctly notes that Ramadei's former duties were "redistributed"

across multiple employees, see Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), at 3 (Doc. No. 40), a reasonable trier of fact could nonetheless conclude that, by assuming most of Ramadei's former duties, Munson effectively replaced Ramadei.

Indeed, additional evidence in the record further suggests that Radiall saw Munson as Ramadei's de facto replacement. Radiall officially hired Munson on October 19, 2020, see Offer Letter, three days after Ramadei was informed of his termination, see Pl.'s Ramadei Dep. Tr. at 133:23-134:13. Radiall's termination letter to Ramadei requested that he use his final days at Radiall to "transfer . . . the important knowledge [he] gained over the years to [Broga] and an entry-level maintenance person"—i.e., Munson. See Termination Letter. And, according to Rigoland's testimony, Radiall delayed Ramadei's termination in part because it wanted to have a maintenance agent "on board" first. See Plaintiff's Transcript of the Deposition of Patrice Rigoland ("Pl.'s Rigoland Dep. Tr."), at 43:14-43:24 (Doc. No. 34-6). Viewed in the light most favorable to the plaintiff, these facts suggest that Ramadei was effectively replaced by Munson. Ramadei has thus met his de minimis burden of establishing a prima facie case.

b)      Legitimate, Nondiscriminatory Reasons for Termination

With the plaintiff establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for Ramadei's termination. Gorzynski, 596 F.3d at 107. Here, Radiall easily clears that hurdle. First, Radiall states that its shifting business and the "consequent reduction in the amount of space and equipment to be maintained", including the move to the smaller Wallingford facility, meant that Radiall's facilities team "no longer . . . need[ed] . . . someone of Plaintiff's

12

management level and broad skill set."  Def.'s Mem. at 12; <u>accord</u> Def.'s LR 56(a)1 Stmt. ¶¶ 9-10, 18.  Second, Radiall states that Ramadei's position was eliminated as part of a broader cost-cutting strategy in the wake of the COVID-19 pandemic, which impacted Radiall's finances. Def.'s Mem. at 12; <u>accord</u> Def.'s LR 56(a)1 Stmt. ¶¶ 20, 22.  In support, Radiall has proffered four documents purporting to show its internal plans to cut costs, in part, by eliminating Ramadei's Facilities Manager position.  <u>See</u> First Defensive Plan; Staff Assessment; June 22 Salary Cuts; Second Defensive Plan.  As courts in this Circuit have held, "[f]inancial difficulties and cost-cutting can be legitimate reasons to terminate an employee."  <u>Dieck v. Suffolk Cnty. Vanderbilt Museum</u>, No. 09-CV-2263, 2011 WL 4434066, at *4 (E.D.N.Y. Sept. 22, 2011); <u>accord</u> <u>McCloskey v. Union Carbide Corp.</u>, 815 F. Supp. 78, 81 (2d Cir. 1993) ("A restructuring and reorganizing of operations is a legitimate non-discriminatory reason for termination.").  Radiall has met its burden of articulating legitimate, nondiscriminatory reasons for Ramadei's termination.

c)      Pretext for Age Discrimination

Because Radiall has provided legitimate, nondiscriminatory reasons for its adverse action, the burden shifts back to Ramadei to demonstrate that Radiall's proffered reasons are pretexts for discrimination.  A plaintiff can demonstrate pretext through circumstantial evidence, including evidence comprising the <u>prima facie</u> case, or by showing that the employer's proffered explanation is unworthy of credence.  <u>See</u> <u>Heyman v. Queens Vill. Comm.</u>, 198 F.3d 68, 72 (2d Cir. 1999)  Moreover, a plaintiff can challenge an employer's proffered explanation by showing that the explanation suffers from "weaknesses, implausibilities, inconsistencies, or contradictions".  <u>Zann</u>

Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).  To defeat summary judgment, the plaintiff must provide evidence that the defendant was motivated, at least in part, by discriminatory animus.  See Wallace, 213 Conn. App. at 623 (applying the motivating factor test as the applicable standard of causation for CFEPA clams).

Ramadei contends that "[Radiall's] stated reasons for terminating Mr. Ramadei—namely, that his position was eliminated, and the diminished scope of the duties following the move to Wallingford—are false".  Pl.'s Mem. at 13.  As evidence, Ramadei points to testimony from Broga that, at the time of his termination in October 2020, his list of responsibilities as Facilities Manager remained "wide ranging in [its] scope" and largely unchanged since the end of 2018.  Pl.'s Broga Dep. Tr. at 35:8-37:12; accord Maintenance Team Responsibilities List, Pl.'s Ex. 3 (Doc. No. 34-10) (listing Ramadei's responsibilities as of November 6, 2018).  However, this evidence, even construed in a light most favorable to Ramadei, does not meaningfully call into question Radiall's core rationale for his termination—that it no longer required a highly skilled, management-level employee to do the facilities work.  Indeed, Ramadei admits that, by the end of 2018, there was "less work that was required of the facility management team."  Def.'s Ramadei Dep. Tr. at 47:9-47:12.  Moreover, Ramadei's evidence that his list of responsibilities remained the same between New Haven and Wallingford does not materially challenge Radiall's reasoning that the much-smaller Wallingford facility required less time, labor, and expertise.  See Def.'s Mem. at 12; Def.'s Reply at 2.  Nor does this evidence rebut Radiall's explanation that the Facilities Manager position was eliminated.  As discussed above, Munson assumed many—but not all—of Ramadei's former duties, see Pl.'s Broga Dep. Tr. at 43:12-49:24, at approximately half of

Ramadei's former salary, see Offer Letter; Pl.'s LR 56(a)2 Stmt. ¶ 41a; Def.'s LR 56(a)1 Stmt. ¶ 41a.  This evidence was sufficient to demonstrate that Ramadei was effectively replaced by Munson for purposes of establishing his prima facie case; it is not, however, sufficient for a jury to find that the Facilities Manager position was not, in fact, eliminated.  In sum, Ramadei's evidence does not raise any genuine dispute of material fact as to whether Radiall's explanations are unworthy of credence.

Ramadei also attempts to offer additional circumstantial evidence that Radiall's explanations were pretexts for age discrimination.  First, Ramadei notes an alleged remark made in 2015 or 2016 by Neale—his prior supervisor—that Moleski, one of Ramadei's then-coworkers, was "old enough to retire and he should."  Pl.'s Ramadei Dep. Tr. at 37:5-37:13.  Even assuming that Neale made this statement—which he denies, see Neale Aff. ¶ 9—the Second Circuit has stated that "[c]omments about another employee's age, removed from any context suggesting that they influenced decisions regarding [the plaintiff's] own employment, do not suffice to create a genuine issue of fact".  Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014).  Here, Neale's alleged statement is of particularly low probative value because (1) it was made four to five years before Ramadei's termination, see Pl.'s Ramadei Dep. Tr. at 36:25-37:13, (2) by an individual who departed the company months before Ramadei was terminated, see Neale Aff. ¶ 1.  As such, the alleged remark does not suffice as evidence of pretext.

As additional evidence, Ramadei offers his own testimony alleging that Moleski, as well as Petrowski and Naclerio—all older employees— were terminated by Radiall after taking medical leave.  See Pl.'s Ramadei Dep. Tr. at 136:15-137:17.  The court

agrees with Radiall that this testimony constitutes inadmissible hearsay and speculation.  In his testimony, Ramadei appears to recount statements by out-of-court declarants to prove the truth of the matters asserted therein—that Radiall has discriminated against older employees and retaliated against them for taking medical leave.  For example, he describes how Petrowski, an "older" employee, "was called at home to tell her her job was eliminated" shortly after taking medical leave, and that she later "explained to [Ramadei] what happened".  Pl.'s Ramadei Dep. Tr. at 136:14-137:17.  These alleged statements constitute hearsay and are thus inadmissible.  See Fed. R. Evid. 801; LaMarch v. Tishman Speyer Props., No. 03-CV-5246, 2006 WL 2265086, at *6 (E.D.N.Y. Aug. 8, 2006) (finding that plaintiff's "testimony regarding other employees' statements about age discrimination" is inadmissible hearsay and therefore cannot be considered).  At other points, Ramadei testifies about his own perception that there was a pattern of terminating older employees at Radiall.  See Pl.'s Ramadei Dep. Tr. at 136:14-137:4 (testifying that Radiall's alleged termination of Moleski, Petrowski, and Naclerio "seemed to follow a pattern"); id. at 168:11-169:13 (testifying as to his belief that Moleski, Petrowski, and Naclerio were terminated due to age discrimination).  These statements are speculation—as Ramadei himself appears to concede, see id. at 169:6-169:13—and are therefore inadmissible.  See Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 517 (S.D.N.Y. 2010) (refusing to consider, as evidence, plaintiff's perception that his employer engaged in a pattern of discrimination against older employees because it was speculation).  A court cannot, at the summary judgment stage, consider evidence that would be inadmissible at trial.  See DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012).  Ramadei has not provided affidavits from any of these

former coworkers.  Nor has he provided any other evidence to corroborate his

testimony.  As such, the court must exclude this testimony from its consideration.

Taken together, Ramadei has not offered evidence upon which a jury could

reasonably find that Radiall's proffered explanations were pretexts for discrimination.[10]

Because no reasonable trier of fact could conclude, from the admissible evidence

provided, that Ramadei's termination was motivated, at least in part, by discriminatory

intent, the Motion for Summary Judgment as to Counts Three and Four is granted.

2.    ADEA Claims (Counts One and Two)

As discussed above, the ADEA adheres to the same McDonnell-Douglas burden-

shifting framework as the CFEPA, see Weichman, 552 F. Supp. 2d at 282, but with a

higher "but-for" causation standard, see Gross, 557 U.S. at 176.  Because Ramadei has

not provided evidence sufficient to demonstrate pretext under the CFEPA's lower

causation standard, his claims under the ADEA also must fail.  Radiall's Motion for

Summary Judgment as to Counts One and Two is granted.

B.    FMLA Retaliation Claim (Count Five)

Radiall also moves for summary judgment as to Ramadei's FMLA retaliation

claim.  See Def.'s Mot.  Under the FMLA, an employer may not "interfere with, restrain,

or deny the exercise of or the attempt to exercise" FMLA-protected rights.  29 U.S.C.

§ 2615.  The Second Circuit generally applies the McDonnell-Douglas burden-shifting

---

[10] Radiall has also provided data purporting to show that, during the relevant time period, it terminated age-protected employees—that is, employees 40 years old and over—at a rate that is virtually identical to the rate at which it terminated employees outside the protected age group.  See List of Active and Terminated Employees, Def.'s Ex. O (Doc. No. 27-4); Age Report Sheet, Def.'s Ex. P (Doc. No. 27-4); Employees Hired and Terminated from 1/1/2020 to 7/1/2021, Def.'s Ex. Q (Doc. No. 27-4).  Because the court finds that Ramadei has not provided evidence sufficient to demonstrate pretext, the court need not consider the demographic data proffered by Radiall.

framework to FMLA retaliation claims.  See Roberts v. Health Ass'n, 308 Fed. App'x 568, 570 (2d Cir. 2009).  To survive summary judgment, a plaintiff must first establish a prima facie case of retaliation; if the defendant then provides a legitimate, nonretaliatory reason for their adverse action, the plaintiff must demonstrate that the defendant's proffered reason is a pretext for retaliation.  Id.  Moreover, to prevail on an FMLA retaliation claim, a plaintiff need only show that his FMLA-protected leave was a motivating factor in his termination, rather than a but-for cause.  See Woods v. START Treatment Recovery Ctrs., 864 F.3d 158, 168-69 (2d Cir. 2017).

        1.     Prima Facie Case

A plaintiff must first establish a prima facie case of retaliation by showing that "(1) [he] exercised [his] rights protected under the FMLA, (2) [he] was qualified for [his] position, (3) [he] suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  Roberts, 308 Fed. App'x at 570.

Radiall argues that Ramadei has failed to establish the first, third, and fourth elements of the prima facie case.[11]  Def.'s Mem. at 16-19.  First, Radiall asserts that Ramadei did not exercise FMLA-protected rights when he notified Musante, Broga, and Rigoland that he was taking time off from work for a medical condition because (1) he never discussed FMLA leave, and (2) there is "insufficient evidence to prove that Radiall had knowledge at the time of the request that the leave likely qualified for FMLA protection".  Id. at 16-17.  However, as Radiall notes, courts in this Circuit have recognized that "FMLA retaliation may be based on proof of a plaintiff's inquiry notice to

---

[11] Radiall does not contest that Ramadei was well qualified for the Facilities Manager position.

his employer . . . requesting potentially FMLA-qualifying leave, even though he may have been unaware of the FMLA's [applicability], so long as the employer had knowledge that the requested purpose likely qualified for FMLA protection."  See McNamara v. Trinity Coll., No. 3:12-CV-363, 2013 WL 164221, at *4 (D. Conn. Jan. 15, 2013); see also Darboe v. Staples, Inc., 243 F. Supp. 2d 5, 17 (S.D.N.Y. 2003) (finding that an employee's request for time off to receive medical treatment, without explicitly requesting FMLA leave, qualified as FMLA-protected leave).  Here, Ramadei notified Radiall via email of his intent to take time off for the remainder of the week to rest and recuperate from his pulmonary embolism condition, as advised by his doctor, and to use prescheduled vacation time for the following week to further recuperate.  See Ramadei Email.  At her deposition, Musante admitted that Ramadei's leave likely qualified for FMLA protection.  See Def.'s Musante Dep. Tr. at 114:2-117:8.  Moreover, Radiall does not contest that Ramadei's email adequately complied with Radiall's FMLA policy, which requires employees to "either request[ ] FMLA leave specifically, or explain[ ] the reasons for leave so as to allow the Company to determine that the leave is FMLA-qualifying."  See Radiall USA Employee Handbook, Pl.'s Ex. 7, at 54 (Doc No. 34-14). Viewing the evidence in the light most favorable to the plaintiff, the court finds that Ramadei's email was sufficient to put Radiall on "inquiry notice" that he was exercising an FMLA-protected right.  See Jennings v. Parade Publ'n, No. 01-CV-8590, 2003 WL 22241511, at *3 (S.D.N.Y. Sept. 30, 2003) ("[O]n the basis of a request and some preliminary information an employer may be put on inquiry notice and thereby obligated to request from the employee additional information regarding the asserted qualifying condition.").  Ramadei provided Radiall with sufficient information to determine whether

his leave was FMLA-qualifying; Radiall's failure to do so does not bar Ramadei's claim.
Ramadei has thus established the first prong of the <u>prima facie</u> case.

Radiall further argues that Ramadei has failed to establish that he suffered an
adverse employment action.  Def.'s Mem. at 15.  That is incorrect.  Ramadei's
employment was terminated.  Termination of employment clearly qualifies as an
adverse action under the FMLA.  <u>See</u> <u>Dighello v. Thurston Foods, Inc.</u>, 307 F. Supp. 3d
5, 21 (D. Conn. 2018) (noting, in an FMLA retaliation claim, that termination constitutes
an adverse employment action).

As to the fourth prong, plaintiff and defendant disagree over whether the
temporal proximity between Ramadei's exercise of FMLA-protected rights and his
termination—approximately one month—is sufficient to establish an inference of
retaliatory intent.  <u>See</u> Def.'s Mem. at 17-18; Pl.'s Mem. at 16.  In the Second Circuit, a
time period of a few weeks between an FMLA-protected act and termination is generally
enough to give rise to an inference of retaliatory intent.  <u>See</u> <u>Rodrigues v. Conn.</u>
<u>Container Corp.</u>, No. 3:20-CV-00294, 2022 WL 844610, at *7 (D. Conn. Mar. 22, 2022);
<u>see also</u> <u>Fernandez v. Woodhull Med. & Mental Health Ctr.</u>, No. 14-CV-4191, 2017 WL
3432037, at *8 (E.D.N.Y. Aug. 8, 2017) (collecting cases supporting the proposition that
"courts frequently find a period of a few weeks sufficient" to raise an inference of
retaliatory intent).  The court agrees with Ramadei that the approximately one-month
gap between his protected activity and his termination is sufficient to raise an inference
of retaliatory intent.[12]  Ramadei has thus met each element of his <u>prima facie</u> case.

---

[12] Radiall counters that, under Second Circuit precedent, "[w]here timing is the only basis for a
claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in

2.      Legitimate, Nonretaliatory Reasons for Termination

Once again, Radiall must articulate a legitimate, nonretaliatory reason for Ramadei's termination.  As discussed above, Radiall states that it eliminated Ramadei's position due to changing business needs and the financial impact of COVID-19, both of which constitute legitimate, nonretaliatory reasons.  See Section IV.A.1.b, supra.

3.      Pretext for Retaliation

At the third step of the McDonnell-Douglas framework, the burden shifts back to Ramadei to demonstrate that Radiall's proffered reasons were a "pretext for retaliation." See Arizmendi v. Rich Prods. Corp., No. 22-CV-1971, 2023 WL 4246106, at *2 (2d Cir. June 29, 2023).  As discussed above, a plaintiff can demonstrate pretext through evidence comprising the prima facie case and evidence that the employer's proffered explanation is unworthy of credence, see Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 173 (2d Cir. 2006)—including, for example, by showing that the explanation contains "weaknesses, implausibilities, inconsistencies, or contradictions".  Zann Kwan, 737 F.3d at 846.

As Radiall correctly notes, the temporal proximity between Ramadei's protected activity and termination—the crux of his prima facie case—is insufficient, by itself, to demonstrate pretext.  See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (per curiam).  However, Ramadei's pretext argument does not end there.  Rather, Ramadei has put forth evidence revealing potential, material inconsistencies in the

---

any protected activity, an inference of retaliation does not arise."  Def.'s Mem. at 18 (quoting Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001)).

Here, however, it does not appear that there were any "adverse job actions" that began before Ramadei's termination.  Although Radiall points to its "cost-cutting plans commenced in April 2020", id., the mere existence of such plans does not constitute a materially adverse job action.  As such, these internal plans do not negate the inference of retaliatory intent.

testimony of two Radiall officials involved in his termination—namely, Rigoland and Musante—about the timing of the decision to terminate him, as well as the underlying reasons for said timing.  Rigoland testified that the decision to terminate Ramadei was made "right after the [COVID-19] crisis[,]  [o]r already when we moved to the new facility".  Pl.'s Rigoland Dep. Tr. at 43:1-43:9.  When asked why Ramadei was not formally terminated until October 2020, Rigoland explained that "he was still completing . . . work", and that Radiall still "had to hire a maintenance agent."  Id. at 47:1-47:8.  Musante, however, testified that the decision to terminate Ramadei was "iterative" and "fluid", and she further testified that the final decision was not made until October 2020 because "we wanted to be thoughtful, and . . . as helpful as possible[ ] about finances."  Plaintiff's Transcript of the Deposition of Lori Musante, at 103:4-103:12 (Doc. No. 34-4).  Most notably, Musante also testified that, up until October 2020, she remained hopeful that "things would . . . change[ ]" and Ramadei's position would not be eliminated.  Id. at 104:16-104:20.

Construed in the light most favorable to the plaintiff, Musante's testimony suggests that, contrary to Rigoland's testimony and the internal documents proffered by Radiall, the elimination of Ramadei's position was not a foregone conclusion by the time he took medical leave.  This evidence of potentially "inconsistent" and unclear employer explanations about the timing of the final decision, combined with the very close temporal proximity between Ramadei's medical leave and termination, is sufficient to defeat summary judgment.  See Zann Kwan, 737 F.3d at 847 (stating that "a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat

summary judgment"); see also Rodrigues, 2022 WL 844610, at *8 (denying summary judgment on an FMLA retaliation claim in part because "genuine issues of material fact exist as to the timing of [the defendant's] decision" to terminate the plaintiff).

In its Reply Memorandum, Radiall argues that the testimony from Rigoland and Musante merely shows "differing perspectives about different events and documents", and that these differing perspectives do not raise any "material" issues of fact. Def.'s Reply at 6. The court respectfully disagrees. Although Rigoland and Musante's depositions do not, necessarily, outright contradict one another, their differing accounts nonetheless raise a genuine question of fact as to whether Radiall officials decided to terminate Ramadei before he took FMLA-qualifying leave. This dispute over timing is particularly relevant because Ramadei bases his retaliation claim on temporality proximity. A reasonable trier of fact could conclude, based on the defendant's inconsistent explanations as to timing—coupled with the close temporal proximity between the FMLA-eligible leave and termination—that Ramadei's sudden use of FMLA-protected leave played a motivating role in Radiall's decision to pull the proverbial trigger and terminate his employment. The timing and potentially inconsistent testimony are thus material, disputed facts that lie in the province of the jury.

The court therefore reserves this question for the jury and denies Radiall's Motion for Summary Judgment as to Count Five.

## V.    CONCLUSION

For the reasons discussed above, the Motion for Summary Judgment (Doc. No. 27) is granted in part and denied in part. The Motion is granted with respect to Counts One, Two, Three, and Four, and denied with respect to Count Five. Defendant's Motion

to Seal Exhibits G, H, I, and J (Doc. No. 26) is also granted in part.  Defendant may refile the Exhibits with all confidential and proprietary information redacted, provided that the portions of the Exhibits that pertain directly to plaintiff and the elimination of the Facilities Manager position—as cited by defendant in its summary judgment materials— are unredacted.

**SO ORDERED.**

Dated at New Haven, Connecticut this 8th day of September 2023.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge