**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GARY T. RAMADEI, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:21-CV-01435 (JCH) |
| | : | |
| v. | : | |
| | : | |
| RADIALL USA, INC., | : | FEBRUARY 10, 2025 |
| Defendant. | : | |

**RULING ON MOTION FOR A NEW TRIAL (DOC. NO. 124) AND MOTION FOR JUDGMENT AS A MATTER OF LAW (DOC. NO. 125)**

**I.    INTRODUCTION**

The plaintiff, Gary T. Ramadei ("Mr. Ramadei") sued the defendant, Radiall USA,

Inc. ("Radiall") under state and federal law, including section 2615 of title 29 of the U.S.

Code, known as the Family Medical Leave Act ("FMLA").  Complaint ("Compl.") (Doc.

No. 1).  The jury only considered Mr. Ramadei's FMLA claim and returned a verdict in

his favor.  Jury Verdict (Doc. No. 86).  Following trial, Mr. Ramadei moved for liquidated

damages, pre- and post-judgment interest, front pay or reinstatement, and attorneys'

fees.  See Ruling on Motion for Award of Liquidated Damages, Motion for Award of Pre-

and Post-Judgment Interest, Motion for Front Pay or Reinstatement, Motion for Attorney

Fees and Costs ("Post-Trial Ruling") (Doc. No. 122).  After considering Mr. Ramadei's

post-trial motions, the court entered judgment in his favor in the amount of $770,006.06

plus post-judgment interest.  Judgment (Doc. No. 123).  Radiall filed a Motion for a New

Trial and Memorandum in Support ("Def.'s Mem. New Trial") (Doc. No. 124) and

renewed Motion for Judgment as a Matter of Law and Memorandum in Support ("Def.'s

Mem. JAML") (Doc. No. 125).  Mr. Ramadei opposes the Motions.  See Pl.'s Opposition

to Motion for a New Trial ("Pl.'s Opp'n New Trial") (Doc. No. 127); Pl.'s Opposition to

renewed Motion for Judgment as a Matter of Law ("Pl.'s Opp'n JMAL") (Doc. No. 126).

For the reasons that follow, the Motions are denied.

## II.    BACKGROUND

The court assumes the parties are familiar with the facts and procedural history of this case, which the court has previously summarized in its Ruling on Motion for Summary Judgment (Doc. No. 44) and Post-Trial Ruling (Doc. No. 122). The court provides only a brief summary of the relevant background here and summarizes additional background information in the Discussion section of this Ruling. Infra, part IV.

During trial, the jury heard testimony from several Radiall employees: Lori Musante ("Ms. Musante"), Director of Human Resources; Rich Broga ("Mr. Broga"), Controller; Patrice Rigoland ("Mr. Rigoland"), General Manager; and Maite Tristan ("Ms. Tristan"), President. See Transcript ("Tr.") Day One (Doc. No. 98); Tr. Day Two (Doc. No. 99); Tr. Day Three (Doc. No. 100). Mr. Ramadei and Joanna Petrowski ("Ms. Petrowski"), a former Radiall employee who had taken medical leave, also testified. Tr. Day One; Tr. Day Two. The jury returned a verdict in Mr. Ramadei's favor and awarded him $187,714.00 for losses he sustained as a result of Radiall's violation of the FMLA. Jury Verdict. Mr. Ramadei moved for liquidated damages, pre- and post-judgment interest, front pay or reinstatement, and attorney fees. Pl.'s Mot Liquidated Damages (Doc. No. 102); Pl.'s Mot. Pre- and Post-Judgment Interest (Doc. No. 103); Mot. Front-Pay or Reinstatement (Doc. No. 104); Mot. Attorney Fees (Doc. No. 105). The court partially granted the Motions. Post-Trial Ruling.

III.    **LEGAL STANDARDS**

    A.    <u>Motion for a New Trial</u>

Under Rule 59, the court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(A).  "A motion for a new trial should be granted when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice."  <u>Song v. Ives Lab'ys, Inc.</u>, 957 F.2d 1041, 1047 (2d Cir. 1992) (cleaned up and internal quotation marks omitted).  In considering a Rule 59 motion, the court may freely weight the evidence "and need not view it in the light most favorable to the verdict winner."  <u>Id.</u> (internal quotation marks omitted).  Nonetheless, "[a] court considering a Rule 59 motion . . . must bear in mind . . . that the court should only grant such a motion when the jury's verdict is egregious." <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 134 (2d Cir. 1998) (internal quotation marks omitted).

    B.    <u>Motion for Judgment as a Matter of Law</u>

Rule 50(b) allows for the entry of judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis.  <u>See</u> Fed. R. Civ. P. 50(b).  The standard under Rule 50 is the same as that for summary judgment: a court may not grant a Rule 50 motion unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached."  <u>This Is Me, Inc. v. Taylor</u>, 157 F.3d 139, 142 (2d Cir. 1998) (alterations in original) (internal quotation marks and citation omitted).

A movant's burden under Rule 50 is "particularly heavy where, as here, the jury has deliberated in the case and has actually returned its verdict in favor of the non-

movant." Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted) (citing Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005)). Indeed, judgment as a matter of law may only be granted where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001 ) (quoting Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998)).

Importantly, "[w]eakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that a reasonable juror would have been compelled to accept the view of the moving party." Playtex Prods., Inc. v. Procter & Gamble Co., 126 F. App'x 32, 34 (2d Cir. 2005) (quoting This is Me, Inc., 157 F.3d at 142).  Rather, the verdict must be upheld "[a]s long as there is some evidence based upon which the jury could have held the defendant[ ] . . . liable[.]"  Newton v. City of New York, 779 F.3d 140, 158 (2d Cir. 2015) (internal quotation marks omitted).

## IV.    DISCUSSION

In Radiall's view, either a new trial or judgment as a matter of law in Radiall's favor is warranted because the court erred in making several evidentiary rulings and preparing Verdict Form Questions One and Two.  See Def.'s Mem. New Trial; Def.'s Mem. JMAL.  Radiall also argues the Motions should be granted because the jury returned a verdict for Mr. Ramadei that was against the manifest weight of the evidence. See Def.'s Mem. New Trial; Def.'s Mem. JMAL.  Mr. Ramadei opposes the Motions,

4

arguing the court did not err as Radiall asserts and the jury's verdict was sound.  See Pl.'s Opp'n New Trial; Pl.'s Opp'n JMAL.  The court considers Radiall's arguments, beginning with those raised in its Motion for a New Trial.

      A.     <u>Motion for a New Trial</u>

           1.     Joanna Petrowski Testimony

Radiall argues the court erred by allowing Ms. Petrowski to testify about her experience taking medical leave because she was not similarly situated to Mr. Ramadei, the decisions to terminate Ms. Petrowski and Mr. Ramadei were made by different Radiall employees, and the terminations occurred three years apart.  Def.'s Mem. New Trial at 4–13.  According to Radiall, Ms. Petrowski's testimony lacked probative value, and, as a result, the court's decision to admit the testimony caused Radiall undue prejudice.  Id. at 13–15.  Mr. Ramadei opposes these arguments.  Pl.'s Opp'n New Trial at 3–10.

A plaintiff may attempt to establish that an employer engaged in a pattern of discrimination by introducing "me too" evidence, that is, evidence that other employees were also subject to discrimination.  "The question whether evidence of discrimination by other supervisors is relevant in an individual . . . case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 379, 388 (2008).  Among the factors courts consider in this District are: (1) "how <u>similar</u> the 'me too' acts of alleged discrimination are to the alleged acts of discrimination against the plaintiff"; (2) "whether any of the <u>same individuals</u> were involved with perpetrating the alleged 'me too' acts of discrimination as those individuals who the plaintiff alleges discriminated against h[im]"; and (3) "what kind of <u>temporal</u>

nexus exists between the alleged 'me too' acts of discrimination and the alleged acts of discrimination against the plaintiff." DeAngelis v. City of Bridgeport, No. 3:14-CV-01618 (JAM), 2018 WL 429156, at *2 (D. Conn. Jan. 15, 2018); accord Miro v. City of Bridgeport, No. 3:20-CV-346 (VAB), 2023 WL 4992877, at *7 (D. Conn. Aug. 3, 2023).

Starting with the first factor, the testimony of Mr. Ramadei and Ms. Petrowski describe similar acts of discrimination. Mr. Ramadei testified that he had worked for Radiall, and its predecessor, Applied Engineering Products ("AEP"), for 31 years. See Tr. Day One, at 201:24–202:2. Mr. Ramadei never received a negative performance evaluation. Id. at 179:11–12. Indeed, before Mr. Ramadi's medical absence, he had no indication that his position was at risk of being eliminated. Id. at 161:18–162:9; 176:23–177:20. At the time of his termination, Mr. Ramadei estimated that there was plenty of work for him to perform in accordance with his typical responsibilities. Id. at 179:5–7; see 201:24–202:2. Despite this, soon after Mr. Ramadei returned to work from his medical absence, Mr. Ramadei's manager, Mr. Broga, told Mr. Ramadei his position had been eliminated. Id. at 199:16–200:1. Mr. Ramadei testified that he could think of no reason for his termination other than that he had taken medical leave. Id. at 202:1–2. He testified that, upon learning of his termination, Mr. Broga, and later, Ms. Musante, asked Mr. Ramadei to sign a form that Mr. Ramadei thought would prevent him from suing Radiall. Id. at 202:17–203:4.

Similar to Mr. Ramadei, Ms. Petrowski testified that she worked for Radiall, formerly AEP, for 34 years and had never received a negative performance review. See Tr. Day Two at 321:19–23. Prior to taking medical leave, Ms. Petrowski, like Mr. Ramadei, had no reason to think her position might be eliminated. Id. at 321:24–322:2;

Tr. Day One at 176:23–177:20.  While Ms. Petrowski was out on her second medical leave, her manager, Marie Pirrez Pez, and Ms. Musante informed Ms. Petrowski that her position had been eliminated.  Tr. Day Two at 317:25–318:24.  This explanation did not make sense to Ms. Petrowski because she believed, as did Mr. Ramadei when he was terminated, that the company was sufficiently busy.  Id. at 319:8–12, 320:17–18; Tr. Day One at 179:5–7.  In the court's estimation, the factual similarities between Mr. Ramadei's termination and Ms. Petrowski's termination outweigh any relevant dissimilarities between the witness' experiences.  Accordingly, the first factor favors admitting Ms. Petrowski's testimony as "me too" evidence.

The second factor also weighs in favor of permitting Ms. Petrowski to testify as a "me too" witness.  Importantly, the second factor suggests the court should consider whether "any" people involved in the termination decisions of the plaintiff and the "me too" witness were the same.  DeAngelis, 2018 WL 429156, at *2.  It may be true, as Radiall argues, that the decision to eliminate Mr. Ramadei's position was made by a somewhat different group of people than those who decided to eliminate Ms. Petrowski's position.  Def.'s Mem. New Trial at 10–11.  However, witness testimony suggests Ms. Musante was involved in implementing Radiall's decision to terminate both Mr. Ramadei and Ms. Musante, and Mr. Rigoland either "validate[d]" or approved the decision to terminate both employees.  Tr. Day One at 202:17–203:4; Tr. Day Two at 317:25–318:4, 24, 437:23–438:7, 439:15–21, 440:14–16.  Indeed, Radiall concedes Ms. Musante and Mr. Rigoland's involvement in both terminations in its memorandum.  See Def.'s Mem. New Trial at 10–11.  The court has identified not just "any" person who was involved in the termination decision of Ms. Petrowski and Mr. Ramadei, it has

identified two senior Radiall employees who either approved or implemented the company's termination decisions.

The court disagrees with Radiall's characterization that Mr. Rigoland played only a "supporting role" in the termination of Ms. Petrowski but was "fundamental" in terminating Mr. Ramadei. Def.'s Mem. New Trial at 12. The court view's Mr. Rigoland as also playing a "fundamental" role in Ms. Petrowski's termination because Mr. Rigoland's testimony suggests his approval was necessary before Ms. Petrowski could be terminated. Tr. Day Two at 432:2–17; 439:15–21. The second factor, therefore, weighs in favor of admitting Ms. Petrowski's testimony because the decision to terminate her position and the decision to terminate Mr. Ramadei's position involved at least two of the same Radiall employees, at least one of whom played a "fundamental" role in the decision to eliminate both positions.

The third, and final, factor does not strongly favor inclusion or exclusion of the "me too" testimony. Radiall cites district court cases where proffered "me too" witnesses were not permitted to testify because their termination was up-to ten years separated from the termination of the plaintiff. Def.'s Mem. New Trial at 12–13 (citing cases). The temporal proximity between the termination of a "me too" witness and a plaintiff may be significant because it serves as one indication about whether the circumstances at issue have probative value. See Miro v. City of Bridgeport, No. 3:20-CV-346 (VAB), 2023 WL 4992877, at *10 (D. Conn. Aug. 3, 2023) (explaining that testimony from a proposed witness who was terminated ten years before the plaintiff would be of limited probative value). However, "temporal proximity is just one factor to consider." Belabbas v. Inova Software Inc., No. 1:16-CV-07379 (LGS), 2019 WL

13258045, at *3 (S.D.N.Y. Oct. 1, 2019) ("The fact that Plaintiff's alleged discrimination happened at least two years after [the "me too" witness'] termination also does not bar [her] testimony.").

The court, weighing all three "me too" factors, concludes that Ms. Petrowski's testimony was relevant because it described a termination experience similar to that of Mr. Ramadei and involved two of the same Radiall employees, both of whom played important roles in the terminations.

Pursuant to Federal Rule of Evidence 403, relevant evidence such as here Ms. Petrowski's testimony should only be excluded when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court considered Rule 403 at trial when it admitted this evidence. The court did not and cannot now conclude that Ms. Petrowski's testimony substantially outweighed its probative value. As a result, the court concludes the testimony was properly admitted and denies Radiall's Motion for a New Trial on this basis.

2.    Gary Ramadei Testimony

According to Radiall, the court erred by allowing Mr. Ramadei to testify about William Moleski's ("Mr. Moleski") experience taking medical leave while employed by Radiall. Def.'s Mem. New Trial at 15–17. According to Radiall, the court erred for two reasons. First, it admitted Mr. Ramadei's testimony about Mr. Moleski pursuant to the state of mind exception of Federal Rule of Evidence 803(3). Id. 15–16. In Radiall's view, the state of Mr. Ramadei's mind was irrelevant to the ultimate question of whether Radiall was liable for FMLA violations. Id. Second, the court's decision to admit this

supposedly irrelevant testimony was contrary to Federal Rule of Evidence 403 because the testimony's de minimis probative value was outweighed by the risk of either unfair prejudice to Radiall or jury confusion.  Id. at 16.

Before addressing each of Radiall's arguments, a brief description of the testimony at issue is worthwhile.  Mr. Ramadei testified during the first day of trial and was asked by his attorney why he sought a doctor's note while on medical leave.  Tr. Day One. At 192:17–20.  Mr. Ramadei explained, in part, that he did so because he "had seen how people were treated."  Tr. Day One at 192:24.  Immediately thereafter, Mr. Ramadei's counsel requested a sidebar and explained to the court that she was concerned Mr. Ramadei was about to discuss Mr. Moleski's experience taking medical leave, which, at the time, was excluded by the court's Motion in Limine Ruling.  Id. at 193:7–11.  In response, the court directed Mr. Ramadei's attorney to avoid eliciting testimony about Mr. Moleski's experience taking FMLA leave.  Id. at 193:13–25.  On the third day of trial, Ms. Musante testified about six employees who had taken medical leave without issue in 2019 and 2020.  Tr. Day Three at 536:23–537:12, 564:16–565:21, 566:10–567:11.  Following this testimony, having found that Radiall had "opened the door", the court allowed Mr. Ramadei's attorney to recall him as a witness so that Mr. Ramadei could testify about his knowledge of Mr. Moleski's medical leave. See id. at 657:18–20.  Radiall objected to Mr. Ramadei's testimony, asserting that it was inadmissible hearsay.  Id. at 658:20.  The court allowed the testimony but, per Federal Rule of Evidence 803(3), instructed the jury to consider Mr. Ramadei's testimony only to the extent it explained his state of mind as he was on medical leave.  Id. at 658:22–659:2.  Following the court's instruction to the jury, Mr. Ramadei explained that Mr.

10

Moleski had taken medical leave from Radiall.  Id. at 659:9–661:14.  Mr. Ramadei

testified that he heard Mr. Moleski had been told his health insurance, presumably

supplied by Radiall, had been revoked while he was on medical leave.  Id. at 660:11–

16.

Turning to Radiall's first argument, evidence is relevant if "it has any tendency to

make a fact more or less probable than it would be without the evidence" and "the fact is

of consequence in determining the action."  Fed. R. Evid. 401.  In making his FMLA

claim, Mr. Ramadei was required to prove that he provided Radiall with sufficient

information about a serious medical condition warranting medical leave.  Jury Charge

(Doc. No. 85) at ¶¶ 12–13.  Mr. Ramadei's testimony goes to this element of his FMLA

claim because it suggests that, at the time Mr. Ramadei was in the hospital, he was

aware of a former Radiall colleague, Mr. Moleski, who had had difficulty taking medical

leave.  Tr. Day Three  660:11–16.  Mr. Ramadei's awareness of Mr. Moleski's

experience makes it more likely that Mr. Ramadei would have obtained medical

documentation of his health condition and shared it with Radiall to avoid the same

interruption to his medical insurance that he thought Mr. Moleski experienced.  See id

660:11–16; Tr. Day One at 194:18–20.  Thus, the court concludes Mr. Ramadei's

testimony about Mr. Moleski's experience taking medical leave while employed at

Radiall is relevant and has some probative value.

As for Radiall's second argument, even relevant evidence may be excluded if "its

probative value is substantially outweighed by a danger of . . . unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  Fed. R. Evid. 403 (emphasis added).  In Radiall's

view, that the jury found Radiall had retaliated against Mr. Ramadei can only be explained by the jury's improper consideration of Mr. Ramadei's testimony about Mr. Moleski because there was no competent evidence that Radiall retaliated against Mr. Ramadei.  Def.'s Mem. New Trial at 17.

Contrary to Radiall's contention, the jury was presented with ample competent evidence upon which it could reasonably have found Radiall retaliated against Mr. Ramadei for taking medical leave.  For example, Mr. Ramadei testified that, having worked at Radiall, including its predecessor, for 31 years, he had never received a negative performance review or disciplinary warning, was never denied a bonus for which he was eligible, and had never been told by any Radiall employee that his performance was in any way unsatisfactory.  Tr. Day One at 178:22–179:13.  Despite Mr. Ramadei's record, Radiall decided to inform him that his position had been eliminated about two weeks after Mr. Ramadei returned from medical leave.  Tr. Day One at 66:1–7.  Mr. Rigoland testified that Mr. Ramadei's position was scheduled for elimination as early as 2018.  Tr. Day Two at 442:18–21.  However, Mr. Rigoland also testified that the decision to terminate Mr. Ramadei was postponed in 2018, 2019, and 2020.  Id. at 442:18–445:2.  Finally, Mr. Rigoland testified that the decision to terminate Mr. Ramadei was made sometime between September 24, 2020, and October 14, 2020, soon after Mr. Ramadei was on medical leave.  Id. at 440:11–441:19.  Considering the testimony just described, the jury was presented with ample evidence to conclude Radiall retaliated against Mr. Ramadei.  Accordingly, the court is unconvinced by Radiall's argument that the state of mind evidence at issue here caused it undue prejudice.  Instead, the court concludes the state of mind evidence was

12

probative and was not substantially outweighed by the risk of undue prejudice or confusion.  To the extent Radiall seeks a new trial on the basis of the Mr. Ramadei's state of mind testimony, its Motion is denied.

         3.     Maite Tristan Testimony

Radiall next argues that the court erred when it refused to allow Radiall to introduce evidence about the date a spreadsheet was created and directed the jury to disregard testimony about the same.  Def's Mem. New Trial at 17–23.  Mr. Ramadei opposes Radiall's assertions.  Pl.'s Opp'n New Trial at 13–16.

During the third day of trial, Radiall called its president, Ms. Tristan, to testify. Counsel for Radiall showed Ms. Tristan Exhibit 10. Tr. Day Three at 610:8–9.  Exhibit 10 is a spreadsheet that includes the description "Staff Replacement - Facility Mgr with Maintenance Agent".  Ex. 10.  Ms. Tristan explained that she, and others, prepared the spreadsheet as part of an effort to reduce costs.  See Tr. Day Three at 610:11–21. Radiall's attorney asked Ms. Tristan to explain why the Google Sheet lacked a date.  Id. at 410:22–24.  Ms. Tristan said that, while the spreadsheet did not display a date, the maker of the cloud-based software, Google, automatically records and dates each time the spreadsheet is edited.  See id. at 610:22–611:17.  Ms. Tristan testified that Exhibit 10 was edited on April 28, 2020.  See id. at 611:17–18.  When Radiall's counsel asked Ms. Tristan how she knew the spreadsheet was edited on April 28, she said she recalled editing it that week with Mr. Rigoland.  Id. at 611:23–612:1.

Ms. Tristan later testified that Radiall undertakes an annual budgeting process beginning each September.  Id. at 615:18–21.  Radiall's counsel directed Ms. Tristan to Exhibit 54, a spreadsheet that again included the phrase "Staff Replacement – Facility Mgr with Maintenance Agent".  Ex. 54.  Ms. Tristan testified that the spreadsheet was

"the September 15 version" of the spreadsheet previously discussed, Exhibit 10.  Tr.

Day Three at 620:17–18.  Counsel for Mr. Ramadei moved to strike Ms. Tristan's

testimony about the date of Exhibit 54, an objection the court sustained.  Id. at 620:21–

621:6.  After this objection, the following exchange occurred between Radiall's counsel

and Ms. Tristan:

> Q: So what was the date that you actually entered into this document [Exhibit 54]?
>
> A: September 15.
>
> Q: How do you know that?
>
> A: I know that because there's a time stamp on the live document in Google . . . . If anybody wanted to check . . . me, it's information that we have available.

Id. at 623:25–624:14.  On cross examination, counsel for Mr. Ramadei asked Ms.

Tristan if she had any documents that could support her testimony about certain dates,

including the dates the spreadsheet was edited.  Id. at 644:7–10.  Ms. Tristan replied

that she did and testified "[counsel for Radiall] has the electronic document where he

can show the time stamps."  Id. at 644:15–17.  Following a sidebar, the court instructed

the jury to disregard Ms. Tristan's response on cross examination that counsel for

Radiall possessed a document in the courtroom that would substantiate Ms. Tristan's

assertions about the date the spreadsheet was edited.  Id. at 648:3–19.

Under Federal Rule of Civil Procedure 26 ("Rule 26"), each party has an

obligation to supplement answers to interrogatories "in a timely manner if the party

learns that in some material respect the disclosure or response is incomplete or

incorrect, and if the additional or corrective information has not otherwise been made

known to the other parties".  Fed. R. Civ. P. 26(e)(1)(A).  Pursuant to Federal Rule of

Civil Procedure 37 ("Rule 37"), "[i]f a party fails to provide information . . . as required by

14

Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Taken together, a party that fails to disclose a document as required under Rule 26 is, ordinarily, prohibited from introducing that document, or information contained therein, at trial.

Application of the Rules just discussed requires the court to consider: (1) whether the electronic version of the spreadsheet that Ms. Tristan described as being present in the courtroom was a separate document from the spreadsheets produced by Radiall, thereby requiring a separate production; and, if so, (2) whether Radiall's failure to produce this document was substantially justified or harmless. Starting with the first issue, the court continues to understand the electronic version of the spreadsheet, as described by Ms. Tristan, to be a separate document from the versions produced by Radiall and introduced as exhibits. This electronic version contained material information not in the spreadsheets that were produced and thus the electronic version should have been disclosed by Radiall to Mr. Ramadei pursuant to Rule 26(e). See Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2049.1 (3d ed.) (describing Rule 26(e)'s supplementation requirement as a "broad . . . directive").[1]

Turning to the second issue, even if Radiall failed to disclose the electronic version of the spreadsheet, it might still have been admissible under Rule 37(c). Fed. R. Civ. P. 37(c)(1). However, Radiall had the burden to show that either the document was withheld for substantially justified reasons, or Mr. Ramadei would be unharmed by

___

[1] Radiall was also required to disclose this electronic document under Rule 26(a)(3)(A)(iii), which directs each party to provide to the opposing party the "identification of each document or exhibit . . . separately identifying those items the party expects to offer or those it may offer if the need arises."

15

its introduction.  See Doe v. Hicks, No. 3:15-CV-01123 (AVC), 2016 WL 5172814, at *8

(D. Conn. Sept. 21, 2016).  During a sidebar, counsel for Radiall argued that its failure

to disclose the electronic version of the spreadsheet was substantially justified.  See Tr.

Day Three at 645:8–16, 646:6–13.  Radiall's counsel noted that, during her deposition,

Ms. Tristan mentioned dates the spreadsheet at issue was edited could be seen on the

electronic version of the document.  Id. at 645:8–16.  Upon learning this, it was Mr.

Ramadei's burden, according to Radiall, to request the electronic versions of the

spreadsheet.  Id.  The court disagrees, as it explained at trial.  Having learned of the

existence of another version of the document at issue, it was Radiall's burden to

supplement its production.  Id. at 645:24–646:5.

    Radiall also argued that the information at issue was metadata, not a separate

version of the spreadsheet, and Mr. Ramadei did not request document metadata.  See

id. at 646:10–13.  The information about the date a document was created or edited

may, ordinarily, be considered metadata.  See United States v. Brown, 843 F.3d 74, 76

n. 1 (2d Cir. 2016) ("Metadata is data typically stored electronically that describes

characteristics of [electronically stored information ('ESI') such as how, when, and by

whom ESI was collected, created, accessed, modified, and how it is formatted."

(cleaned up and internal quotation marks omitted)).  Metadata is typically not visible to

the naked eye, instead, it is usually information hidden within a document that must be

extracted to be viewable.  See Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of

Homeland Sec., 255 F.R.D. 350, 354 (S.D.N.Y. 2008) (describing metadata as including

"hidden text").  Here, by contrast, Ms. Tristan described the electronic version of the

spreadsheet as "the document . . . [with a] time stamp by Google."  Tr. Day Three at

642:1–2.  Earlier, she testified that Google Sheets allows the user to "open the software and say . . . show me what [the spreadsheet] looked like on this date and the software will show me what it looked like."  Id. at 611:9–12.  Based on the foregoing, the court understands Google Sheets to offer users a version control function that allows them to view iterations of a document on command.  When a user selects the version of the document they wish to view, the date is prominently displayed on the electronic version of the spreadsheet.  Radiall, therefore, was not substantially justified in withholding the electronic version of the spreadsheet, because Mr. Ramadei requested electronically stored information, such as the electronic version of the spreadsheet at issue here.  Pl.'s Ex. 7 at 1.[2]

Finally, even if the court erred in excluding the electronic version of the spreadsheet, the court issued a narrow instruction to the jury about disregarding Ms. Tristan's testimony.  Tr. Day Three at 648:5–9.[3]  The jury was free to consider Ms. Tristan's other testimony suggesting that Exhibit 54 was edited on September 15, 2020, including that Radiall undertakes a budgeting process every September and that Ms. Tristan's examination of the spreadsheet revealed it was edited on the date in question.

---

[2] Radiall made no argument at trial about whether introduction of the electronic version of the spreadsheet would be harmless.  See Tr. Day Three at 644–648.  However, the court's view is that Mr. Ramadei would have been harmed, i.e., prejudiced, by introduction of the spreadsheet at issue near the close of trial.

[3] The court's instructed the jury as follows:

Ladies and gentlemen . . . during cross-examination, Attorney DeMatteis has been questioning [Ms. Tristan] and in the course of the questioning, there has been testimony given that would put out the idea that there's something in the courtroom that would evidence testimony she gave on direct.  You are to disregard that testimony.  You have no knowledge as you sit here as jurors and as you deliberate that there is anything today that could show a basis for some testimony she gave.

Tr. Day Three at 648:5–9.

See id. at 615:20–21, 623:25–624:18.  As a result, the court does not conclude that Radiall was prejudiced such that a new trial is warranted.  See Pace v. Nat'l R.R. Passenger Corp., 291 F. Supp. 2d 93, 97 (D. Conn. 2003) ("A motion for new trial on the basis of improper evidentiary rulings will be granted only where the improper ruling affects a substantial right of the moving party.").  The court, therefore, denies Radiall's Motion to the extent it seeks a new trial on this basis.

>    4.    Verdict Form Question One

Radiall argues Verdict Form Question One was impermissibly vague because it failed to ask the jury to provide a basis for its finding that Mr. Ramadei's termination was motivated, at least in part, by his medical leave.  Def.'s Mem. New Trial at 27.  That Question One was vague is suggested by the jury's supposedly conflicting answer to Question Five, where it found Radiall acted in good faith and reasonably believed it was not violating the FMLA when it terminated Mr. Ramadei.  Id. at 27–28.   In opposition, Mr. Ramadei argues Radiall failed to object to Question One.  Pl.'s Opp'n New Trial at 18.

Radiall does not cite to any portion of the record showing it objected to Verdict Form Question One.  See Def.'s Mem. New Trial at 27–28.  "[U]nless there is plain error, failure to object to an issue during trial precludes review of that issue on a motion for a new trial."  Hardy v. Saliva Diagnostic Sys., Inc., 52 F. Supp. 2d 333, 340 (D. Conn. 1999) (internal quotation marks omitted) (citing Schaafsma v. Morin Vermont Corp., 802 F.2d 629, 636 (2d Cir.1986)); accord Pace v. Nat'l R.R. Passenger Corp., 291 F. Supp. 2d 93, 97 (D. Conn. 2003).  The court is unable to locate any such objection upon its own review of the record.  Radiall, having failed to object to Verdict Form Question One, the court will consider whether its formulation of Question One

constitutes plain error.  See Lavin-McEleney v. Marist Coll., 239 F.3d 476, 482 (2d Cir. 2001).  "To constitute plain error, a court's action must contravene an established rule of law, and go to the very essence of the case."  Rasanen v. Doe, 723 F.3d 325, 333 (2d Cir. 2013) (internal quotation marks and citations omitted).

The court does not agree with Radiall that the jury's answers to Verdict Form Questions One and Five suggest the jury was confused by Question One.  Indeed, the court does not view the jury's answers to Questions One and Five as being contradictory.  As the court explained in its prior Ruling, an employer may violate the FMLA without intending to do so and while acting in good faith. Post-Trial Ruling at 8– 15.  The Jury Charge similarly explained "[a]n employer who violates the FMLA must also pay an additional amount known as liquidated damages[,] [unless] you find . . . Radiall['s] . . .  violation was in good faith and" Radiall reasonably believed it was not violating the FMLA.  Jury Charge at ¶ 19.  Accordingly, the court does not view the jury's answers to Verdict Form Questions One and Five as suggesting the jury was confused. As this was the basis of Radiall's challenge to Verdict Form Question One, the court concludes Radiall has failed to demonstrate Question One amounts to plain error and denies Radiall's Motion for a New Trial on this basis.

### 5.    Verdict Form Question Two

Verdict Form Question Two was impermissibly vague, according to Radiall, because it did not require the jury to allocate backpay between the Facilities Manager and Maintenance Associate positions.  See Def.'s Mem. New Trial at 25–26.  In Radiall's view, this error was prejudicial because it introduced unnecessary ambiguity when the court calculated front-pay.  Id. at 26–27.  Absent this supposed error, there would be no need for the court to speculate about which position, Facility Manager or

19

Maintenance Associate, should serve as the basis of the court's front-pay calculation.
See id. Mr. Ramadei opposes this argument, noting that Radiall failed to formally object
to the Verdict Form and has not satisfactorily argued that the vagueness of the form
warrants a new trial. Pl.'s Opp'n New Trial at 18. While Radiall may not have formally
objected to Question Two, Radiall did suggest modifications to Question Two. See Tr.
Day Three at 674:1–5. Accordingly, the court will review Radiall's challenge to Question
Two on the merits.

Radiall requested that the court adopt a verdict form that directed the jury to
calculate backpay on an annual basis, considering the Facilities Manager and
Management Associate positions separately. See Def.'s Mem. New Trial at 24–26.
Had the court adopted Radiall's proposed verdict form, the jury would have had to enter
some monetary value in as many as fourteen separate places. See id. The verdict
form adopted by the court, by contrast, required the jury to enter a monetary value only
once, thereby simplifying the work of the jury and reducing the risk that they might
become confused.

That the court's version of Verdict Form Question Two is adequately clear is
made all the more apparent when considering the court's jury instructions, which the
jury is presumed to have followed. United States v. Williams, 690 F.3d 70, 77 (2d Cir.
2012). In this case, the court properly instructed the jury as to the manner in which it
should calculate back pay. Jury Charge at ¶ 17. The court sees no reason to conclude
that the jury failed to follow this instruction when completing Verdict Form Question
Two. Thus, Radiall has not established that Verdict Form Question Two suggests that

the jury has reached an erroneous result, or the verdict is a miscarriage of justice.

Accordingly, the court denies Radiall's Motion for a New Trail on this basis.

>                6.    Jury Verdict

Radiall's final argument as part of its Motion for a New Trial is that the jury's

answer to Verdict Form Question One was contrary to the weight of the evidence

because there was no evidence that Radiall's decision to eliminate Mr. Ramadei's

position was motivated by his medical leave.  Def.'s Mem. New Trial at 23–24.

"[A] decision is against the weight of the evidence if and only if the verdict is (1)

seriously erroneous or (2) a miscarriage of justice."  ING Glob. v. United Parcel Serv.

Oasis Supply Corp., 757 F.3d 92, 99 (2d Cir. 2014).  As the court has already

explained, the jury was presented with ample evidence upon which it could find Radiall's

decision to terminate Mr. Ramadei was motivated, at least in part, by his use of medical

leave.  See, supra, part IV.A.2.  The court concludes that the jury's verdict was neither

seriously erroneous nor a miscarriage of justice and denies Radiall's Motion for a New

Trial on this basis.  Having considered and rejected all of Radiall's arguments, the court

denies its Motion for a New Trial.

>        B.    Motion for Judgment as a Matter of Law

Pursuant to Rule 50(b), Radiall submits a renewed Motion for Judgment as a

Matter of Law.  It argues the jury's verdict was contrary to the manifest weight of the

evidence and could have been reached only as a result of conjecture or surmise, failure

to follow the court's jury instructions, and errors of law made by the court.  See Def.'s

Mem. JMAL.  Mr. Ramadei opposes this Motion, citing evidence admitted at trial that

supports the jury's verdict.  Pl.'s Opp'n Judgment as a Matter of Law ("JMAL") (Doc. No.

126).

The standard governing the court's consideration of motions made under Rule 59 is "less stringent" than the standard applied to motions made under Rule 50. This is because "(1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence h[er]self, and need not view it in the light most favorable to the verdict winner.'" Manley v. AmBase Corp., 337 F.3d 237, 244–45 (2d Cir. 2003) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 (2d Cir.2001)).

Radiall argues its renewed Motion for Judgment as a Matter of Law should be granted because Ms. Musante, Mr. Rigoland and Ms. Tristan all testified that the decision to eliminate Mr. Ramadei's position had been made "years prior" to Mr. Ramadei taking medical leave. Def.'s Mem. JMAL at 3. The company's decision, according to Radiall's summary of the evidence introduced at trial, stemmed from its downsizing of the Connecticut facility and financial strain resulting from the COVID-19 pandemic. Id. at 3.

That the jury did not credit Radiall's explanation for the elimination of Mr. Ramadei's position does not mean that its Motion for Judgment as a Matter of Law is warranted. As already discussed, the court concludes the jury was presented with evidence from which it could have reasonably found Radiall's decision to eliminate Mr. Ramadei's position was made because he took medical leave. See, supra, part IV.A.2. Accordingly, the court denies Radiall's renewed Motion for Judgment as a Matter of Law.

## V.    CONCLUSION

For the reasons stated above, the court denies the defendant's Motion for a New Trial (Doc. No. 124) and Motion for Judgment as a Matter of Law (Doc. No. 125).

22

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of February 2025.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge